## CAREY, Adm'r, *v.* WILLIAMS.

1. CHANCERY PRACTICE. *Partnership. Account as to, not allowed. When.* On bill filed to wind up a specified partnership, the defendant cannot in his answer insist on and have an account of a previous partnership nowise connected with the one involved in the original bill.

2. SAME. *Same. Not allowed by cross-bill. When.* It would be equally improper to allow such investigation and account by cross-bill, unless it stands on some independent equity, such as an equitable set-off on grounds stated sufficient to entitle the party to that relief on settled principles of equity jurisprudence.

3. SAME. *Same. Reference to clerks reprehended. When.* Practice of referring cases to clerks to report and state accounts between parties, before any adjudication of the rights of the parties by the court, emphatically disapproved.

---

### FROM CAMPBELL.

---

Appeal from the Chancery Court at Jacksboro. O. P. TEMPLE, Ch.

WASHBURN & GIBSON for complainant.

HALL, PROSSER, HENDERSON & JOUROLMAN for defendant.

FREEMAN, J., delivered the opinion of the court.

This bill is filed for an account of a partnership between the deceased, William Carey, and respondent. Said partnership was formed in 1859 or 1860, and ended with the one transaction, the purchase and sale of a considerable drove of mules, which were sent to Georgia, where most of them were dis-

posed of, the remainder brought back and divided between the partners.

In the answer to this bill respondent says that previous to the transaction referred to, said testator Carey, and himself had purchased another lot of mules and horses in partnership, and that their accounts in reference to this purchase had never been settled, and claims that Carey had received the larger portion of the proceeds of that sale, and asks for an account of that matter in connection with the matter of complainant's bill.

Respondent does not state the date of the adventure in his answer, nor charge it to have been a transaction connected with the partnership sought to be settled by the bill of complainant. On this answer being filed the Chancellor made an order, based on the statement that an account would be necessary in the case, referring the whole matter between the parties to the clerk to take proof, and report the state of the accounts, both with reference to the matter of the original bill and the matters set up in the answer. On this, proof was taken and a report made, which was excepted to, when the Chancellor announced that he would not consider any matter except the transaction in the bill, whereupon respondent then asked leave to file a cross-bill, setting up his claim as to the previous horse and mule transaction, which was refused by the Chancellor, to which respondent excepted. The case proceeded to another report, which was not excepted to, and thereupon it was confirmed, and a decree entered in favor of complainant for

Carey v. Williams.

twenty-seven dollars and seven cents, when Williams appealed from that as well as all other decrees and orders in the cause.

The question first to be settled is whether the Chancellor erred in refusing to allow the account as to the other transaction referred to in the answer, and refusing to permit a cross-bill to be filed.

An earnest argument is presented in favor of appellant on this aspect of the case.

We have examined such of the authorities as we have had access to in support of his view, but we do not think they support the position sought to be maintained. The facts are, that the two partnerships or adventures had no connection the one with the other. The first occurring in 1853, being like the last, a single transaction; the other in 1859 or 1860. We hold, that in a case of a bill filed to wind up the affairs of a specified partnership, the respondent cannot on any sound principles be allowed to ask in his answer an account of another and different partnership, and nowise connected with the one sought to be settled in the bill of complainant. This would be to introduce new and incongruous matter into the litigation, not only not serving in the determination of the issue involved, but complicating the investigation by matter appropriate to an original bill, and would necessarily present such matter as complainant in the original bill should be permitted to meet and explain by an answer. The matter of an original suit ought not to be permitted to be thus introduced into a simple answer.

It was equally improper as a matter for a cross-bill on the fact, prescribed in this case. It was not a matter arising out of the original transaction, had no connection whatever with it, and could only be brought into that litigation properly on some new and independent equity, such as in a case where an equitable set-off might be sought on grounds which would be sufficient basis for such relief in a court of equity.

This might be conclusive of the matter involved in this case as it stands before us. But on examination of the testimony, we do not think the defendant would have gained much by his motion for a cross-bill had he been allowed to file it. It would have taken a very strong array of testimony to have met the presumption arising from lapse of time (over ten years perhaps from 1853 to the death of Carey) that the matter of that adventure had been settled up and adjusted. The other facts shown in the testimony serve to strengthen, if not render conclusive, this presumption or evidence arising from lapse of time. So that we can very satisfactorily say that no wrong was done Williams in any aspect of this case by the action of the Chancellor. It is proper to say here that this case furnishes a striking illustration of the evil of the practice of referring a case to the master without any adjudication of or ascertainment of the rights of the parties to guide him as to what is properly to be enquired into. Much trouble and expense could have been saved by first submitting the issues between the parties to the Chancellor, having his judgment upon them, and definite directions given

the master for his guidance in the investigation he was required to make. No such practice ought to be tolerated by the Chancellor, as it can serve no good purpose, and in most cases leads to complication and expense.

Upon the whole case we see no error in the decree of the Chancellor, and affirm it with costs of this court.